IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00094-WJM-CBS

TERRY OWEN,
        Plaintiff,

v.

ANGEL MEDINA,
J. FALK,
JOHN REILLY, and
WILLIAM RUSHER,
        Defendants.

---

ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on: (1) Defendants' Motion to Dismiss; and (2) Mr. Owen's "Motion for Leave to File an Amended Complaint."  Pursuant to the Order Referring Case dated April 24, 2012 (Doc. # 12) and the memoranda dated June 22, 2012 (Doc. # 17) and November 14, 2012 (Doc. # 29), these matters were referred to the Magistrate Judge.  The court has reviewed the Motions, Mr. Owen's Objection ("Response") (filed July 19, 2012) (Doc. # 21), Defendants' Reply (filed August 1, 2012) (Doc. # 23), Defendants' Response (filed December 5, 2012) (Doc. # 30), the Preliminary Scheduling Conference held on July 30, 2012, the Status Conference held on October 11, 2012, the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

Plaintiff Terry Owen is incarcerated at the Limon Correctional Facility ("LCF") of the Colorado Department of Corrections ("CDOC").  Mr. Owen's allegations arise from events that occurred on September 15, 2010 at LCF.   (*See* Prisoner Complaint ("Complaint") (Doc.

# 1) at 4-5 of 11; tendered Amended Prisoner Complaint ("AC") (Doc. # 28-1) at 5-6 of 13).

Mr. Owen alleges that on September 15, 2010, he was terminated from his job at the garment

factory in retaliation for refusing to be voluntarily moved to the incentive unit, that he grieved

the termination of employment on September 29, 2010, and that he was moved from his

assigned housing unit in retaliation for filing the grievance.  (*See id.* at 4-5 of 11, 5-7 of 13).

Proceeding *pro se*, Mr. Owen alleges pursuant to 42 U.S.C. §§ 1983 and 1988 that by

terminating him from his prison job, Defendants violated his First Amendment rights and his

Fourteenth Amendment rights to due process and equal protection and conspired to violate

these rights.  (*See id.*).  Mr. Owen seeks declaratory and injunctive relief and nominal,

compensatory, and punitive damages.  (*See id.* at 11 of 11, 13 of 13).


II.     Plaintiff's Motion for Leave to File an Amended Complaint

        Mr. Owen moves to amend his Complaint and tenders his proposed Amended

Complaint.  Defendants object to Mr. Owen's Motion, arguing that his "proposed Amended

Complaint appears to be identical to the original Complaint" and incorporating "by reference

the arguments asserted in [their] Motion to Dismiss as grounds for denying Plaintiff's motion

for leave to amend."  (*See* Response (Doc. # 30) at 3 of 6).  The District Court for the District

of Colorado has noted that "[r]ather than force a Rule 12(b)(6) motion into a Rule 15(a)

opposition brief, the defendants may be better served by waiting to assert Rule 12 motions

until the operative complaint is in place."  *General Steel Domestic Sales, LLC v. Steelwise,*

*LLC*, No. 07-cv-01145-DME-KMT, 2008 WL 2520423, at * 4 (D. Colo. 2008).[1]  If Defendants

have viable grounds for dismissing Mr. Owen's Amended Complaint (which they characterize

as identical to the original Complaint), such arguments are more efficiently raised in the

---

[1]     Copies of unpublished decisions cited are attached to this Recommendation.

context of their Rule 12 motion, rather than indirectly under Rule 15(a). *See id.* (recognizing that a futility argument under Rule 15(a) effectively places "the cart before the horse").  At the very least, proceeding under Rule 12 would avoid one round of objections under either Fed. R. Civ. P. 72(a) or (b).[2]  *Cf. In re K-Dur Antitrust Litigation*, 338 F. Supp.2d 517, 528 (D. N.J. 2004) (noting efficiencies of disposing of a motion to amend along with a Rule 12 motion); *Leach v. Northern Telecom, Inc.*, 790 F. Supp. 572, 573-74 (E.D.N.C. 1992) (reasoning that a pragmatic approach to plaintiff's motion to amend assured the best use of judicial time and resources).  As Defendants have incorporated the arguments asserted in their Motion to Dismiss, the court will permit Mr. Owen's amended pleading and address Defendants' arguments to Mr. Owen's Amended Complaint.

III.     Defendants' Motion to Dismiss

A.      Standard of Review

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defendants' assertion of Eleventh Amendment immunity constitutes a challenge to the allegations of subject matter jurisdiction in the Complaint.  *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) ("an assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court");  *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) ("Once effectively asserted [Eleventh Amendment] immunity constitutes a bar to the exercise of federal subject matter jurisdiction.") (original emphasis omitted)). Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  The determination of subject matter jurisdiction is a

---

[2]     An order denying a motion to amend may be dispositive if the order effectively removes a claim or a party from the action.  *See Pedro v. Armour Swift-Eckrich*, 118 F. Supp.2d 1155, 1157 (D. Kan. 2000)).

threshold issue of law, *Madsen v. U.S. ex rel. U.S. Army Corps. of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987), that the court addresses before turning to the merits of the case. *Ruiz*, 299 F.3d at 1180. As the party asserting jurisdiction, Mr. Owen bears the burden of establishing that this court has jurisdiction to hear his claims. *American Fair Credit Ass'n v. United Credit Nat. Bank*, 132 F. Supp. 2d 1304,1308-09 (D. Colo. 2001) (citation omitted). "Mere conclusory allegations of jurisdiction are not enough; the party pleading jurisdiction must allege in his pleading the facts essential to show jurisdiction." *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) (internal quotation marks and citations omitted).

Defendants argue pursuant to Rule 12(b)(6) that Mr. Owen fails to state a claim upon which relief can be granted. The court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F. 3d 1210, 1215 (10th Cir. 2007) (internal quotation marks and citation omitted). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S.Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Because Mr. Owen appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v.*

*Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (court's role is not to act as pro se litigant's

advocate);  *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court

may not "supply additional factual allegations to round out a plaintiff's complaint");  *Drake v.*

*City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct

arguments or theories for the plaintiff in the absence of any discussion of those issues").


B.      Analysis

        Section 1983 creates a cause of action where a  "person . . . under color of any

statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be

subjected, any citizen of the United States or other person . . . to the deprivation of any rights,

privileges or immunities secured by the Constitution."  Section 1983 does not create any

substantive rights; rather, it creates only a remedy for violations of rights secured by federal

statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600,

616-18 (1979).  To establish a claim under § 1983, a plaintiff must prove he was deprived of

a right secured by the Constitution or laws of the United States and that the alleged

deprivation was committed under color of law.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526

U.S. 40, 49-50 (1999).


        1.      Liability of Defendants in their Official Capacities

        Mr. Owen sues Defendants in both their individual and official capacities.  (*See* Doc. #

28-1 at 3-4 of 13).  To the extent that Mr. Owen is suing Defendants in their official capacities,

he is actually attempting to impose liability on their employer, the Colorado Department of

Corrections ("CDOC").  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official

in his or her official capacity is treated as a suit against the state).    The CDOC is considered

an agency of the State of Colorado.  *See* Colo. Rev. Stat. § 24-1-128.5.  The Eleventh

Amendment provides for the sovereign immunity of a state or state actors sued in federal court. *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), *overruled on other grounds by Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). "[W]hen a suit seeks money damages against an official of a state agency, suing that official in his or her official capacity, then the real party in interest is the state, and the suit is barred by the Eleventh Amendment." *Id.* (internal quotation marks and citation omitted). The Eleventh Amendment confers total immunity from suit, not merely a defense to liability. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citation omitted). To the extent that Mr. Owen is suing Defendants who are state employees in their official capacities for money damages, such claims are properly dismissed without prejudice as barred by the Eleventh Amendment.[3]

The Eleventh Amendment does not always bar actions in federal court seeking injunctive relief against state officials. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotation marks and citation omitted). Nor does the Eleventh Amendment bar actions for damages against state officials in their individual capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). To the extent that Mr. Owen is suing Defendants in their individual capacities, personal capacity suits seek to impose personal liability upon a government official for actions

---

[3]  "Generally, a dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect." *Garman v. Campbell County Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010). *See also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.").

he or she takes.  *Graham*, 473 U.S. at 165-67.  The court proceeds to evaluate whether Mr.

Owen states any claim against Defendants in their individual capacities or in their official

capacities for injunctive relief.

2.      Liability of Defendants in their Individual Capacities

a.      Plaintiff's Claim for Violation of First Amendment Rights

Mr. Owen alleges that Defendant Reilly retaliated against him by removing him from

his prison job on September 15, 2010 because he engaged in conduct protected by the First

Amendment, that is, "voic[ed] my opinion and for my choice to not volunteer for the prison

incentive unit . . . ."  (*See* Doc. # 28-1 at 9 of 13).  On September 20, 2010, Mr. Owen filed a

grievance concerning his removal from his prison job.  (*See* Doc. # 28-1 at 6 of 13).  He

alleges that on September 24, 2010, Defendant Rusher moved him from his housing

assignment in retaliation for "filing my grievance."  (*See id.*)

Prison "officials may not retaliate against or harass an inmate because of the inmate's

exercise of his constitutional rights . . . even where the action taken in retaliation would be

otherwise permissible."  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir.1998) (internal

quotation marks and citation omitted).  *See also Hartman v. Moore*, 547 U.S. 250, 256 (2006)

(noting that "the law is settled that as a general matter the First Amendment prohibits

government officials from subjecting an individual to retaliatory actions, including criminal

prosecutions, for speaking out").  "The fact that Plaintiff does not have a constitutional right to

employment would bar him from succeeding on a procedural due process claim, but it does

not foreclose his retaliation claim arising from the loss of his prison job."  *Milligan v.

Archuleta*, 659 F.3d 1294, 1296 (10th Cir. 2011) (citation omitted).  "Retaliation may be

actionable . . . even when the retaliatory action does not involve a liberty interest."  *Id.*

(internal quotation marks and citation omitted).

7

Nevertheless, "an inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity." *Peterson*, 149 F.3d at 1144. Retaliation claims in a prison context are viewed with "skepticism because [e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 2006)(internal quotation marks and citation omitted). "[I]t is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role." *Peterson*, 149 F.3d at 1144. The retaliation inquiry should "be undertaken in light of the general tenor of *Sandin*, which specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (internal quotation marks and citation omitted). "[W]e should afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Babcock*, 102 F.3d at 275 (internal quotation marks and citation omitted). Therefore, "[a]n inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (internal quotation marks and citation omitted). "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Id.* (internal quotation marks and citation omitted). *See also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) ("[I]n order to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action.") (citation omitted); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) ("To state a valid claim for retaliation under § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her

exercise of that right, (3) a retaliatory adverse act, and (4) causation.").

Mr. Owen alleges that he engaged in protected conduct when he refused to volunteer for the prison incentive unit.

> On September 15, 2010, John Reilly, Capt[ai]n William Rusher and Capt[ai]n Lynn called a meeting with garment factory workers.  They spoke with us collectively, told us Warden Angel Medina wanted to turn Pod B of Unit 5 into an incentive pod, but did not have enough volunteers to fill it up, and have some overflow.  They asked us how we felt about volunteering for the incentive unit.  Some said they would volunteer for the incentive unit, the majority said they refuse to volunteer for the incentive unit, and some said they needed to think about it.  I said no also to not volunteering for the incentive unit.  I said the incentive unit was full of sex offenders that do not meet the criterion, that were not program compliant, that under Colorado State law sex offenders must be examined, constantly monitored and treated, and that the incentive unit was not a positive environment, it was just a safe haven for sex offenders. . . .

(*See* Doc. # 28-1 at 5-6 of 13).  Defendants argue that "Mr. Owen's vague allegations of retaliation fail to state a claim for relief."  (*See* Doc. # 15 at 5 of 15).

First, Mr. Owen's claim based on termination from his prison job fails as a matter of law because his comments about the incentive unit were not protected conduct.  His comments were nothing more than his personal conclusory opinion that the incentive unit "was just a safe haven for sex offenders."  *See Lewis v. Randle*, No. 02-4297, 66 F. App'x 560, 562 (6th Cir. May 23, 2003) (noting that prisoner's letter of complaint to warden "arguably was not constitutionally protected");  *Wilson v. Budgeon*, No. 3:05–2101, 2007 WL 464700, at *6 (M.D. Pa. Feb. 13, 2007) (holding that inmate's argument with prison official was not protected conduct).  A retaliation claim does not arise when prisoner does not have a protected interest in the underlying activity.  *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir. 1990).

Second, Mr. Owen's claim that Defendant Rusher moved him from his housing assignment in retaliation for filing a grievance fails because he does not adequately plead that Defendant Rusher acted based on any retaliatory motive or that but for a retaliatory

motive based on his protected conduct (the grievance), he would not have been moved out of his living unit.  Mr. Owen merely alleges certain events: "I was told that I had been fired by order of John Reilly. . . On Sept. 20, 2010, I filed a grievance concerning my due process and liberty interest rights being violated." (*See* Doc. # 28-1 at 6 of 13).  Without specifying any dates, Mr. Owen alleges that Defendant Reilly responded to his Step 1 grievance and Defendant Falk responded to his Step 2 and 3 grievances.  (*See id.* at 6, 9 of 13).  "On Sept. 24, 2010, William Rusher moved me from my assigned living unit in retaliation to my grievance." (*See* Doc. # 28-1 at 6 of 13).  Mr. Owen fails to allege a chronology of events pointing to Defendant Rusher's intent to retaliate against him for filing a grievance.  He does not allege that Defendant Rusher had any knowledge of his grievance.  He fails to adequately allege that his grievance was the "but for" cause for the move out of his living unit.  He alleges nothing more than his personal belief that he is the victim of retaliation.  Mr. Owen cannot state a claim for retaliation or refute Defendants' Motion with mere conclusory allegations.  *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("[T]he court may insist that the plaintiff put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal . . . .") (internal quotation marks and citation omitted);  *Baker v. Smith*, 771 F. Supp. 1156, 1158 (D.Kan. 1991) ("A complaint that contains only conclusory allegations of a deprivation of a constitutional right and thus fails to supply a sufficient factual basis to allow defendants to intelligently prepare a defense fails to state a cause of action and must be dismissed") (citations omitted).  Even when viewed in a light most favorable to Mr. Owen, his generalizations do not state a claim for retaliation.

      b.      Plaintiff's Claim for Violation of Fourteenth Amendment Due Process Rights

      Mr. Owen alleges that termination from his prison job violated his Fourteenth

Amendment due process rights.  (*See* Doc. # 28-1 at 11 of 13).  The Fourteenth Amendment prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  "The Constitution does not create a property or liberty interest in prison employment."  *Ingram v. Papalia*, 804 F.2d 595, 596–97 (10th Cir. 1986) (citing cases).  "Therefore, any such interest must be created by state law by language of an unmistakably mandatory character."  *Id.* (internal quotation marks and citation omitted). *See also Boutwell v. Keating*, 399 F.3d 1203, 1212 (10th Cir. 2005) ("A liberty interest may inhere in the Due Process Clause or it may be created . . . by state law.") (internal quotation marks and citation omitted).  "Colorado law does not create a protected property or liberty interest to either employment in any particular job or continued employment in any particular job."  *Id.* (citing Colo. Rev. Stat. § 17-24-102 and § 17-24-102(1)).  As a matter of law, to the extent that Mr. Owen's claim is premised on his termination from his prison job, he has no entitlement to protection under the due process clause.  *See Gilbreath v. Clark*, No. 05-1380, 2006 WL 1997636, at * 2 (10th Cir. July 18, 2006) ("The law is clear: [a Colorado state] prisoner does not have a protected liberty interest in his prison job."

To the extent that Mr. Owen alleges that he was improperly terminated from his prison employment in violation of "CDOC State Administrative Regulation (AR 850-15)," the "failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision")).  *See also Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (claim under section 1983 is available to redress violations of federal statutory and constitutional law);  *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim" for deprivation

of a right secured by the Constitution or laws of the United States.) (citations omitted).

In sum, Mr. Owen fails to state a claim to which relief can be granted for a Fourteenth Amendment due process violation.

c.    Plaintiff's Claims of Violation of Fourteenth Amendment Equal Protection Rights

The Equal Protection Clause requires that no state "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV.  The fundamental guarantee of the Equal Protection Clause is that "all persons similarly situated shall be treated alike." *City of Cleburne Texas v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). The Equal Protection Clause does not forbid classifications, but simply prevents government decision makers from treating differently persons who are in all relevant respects alike. *Juarez v. Renico,* 149 F. Supp. 2d 319, 324 (E.D. Mich. 2001).  To properly allege an equal protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).  *See also Harris v. McRae*, 448 U.S. 297, 323 n. 26 (1980) (the challenged disparate treatment must be the result of purposeful discrimination).  If a claim is not based on a suspect classification or membership in a protected class, the plaintiff must also allege sufficient facts to establish that "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose."  *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).

Mr. Owen does not assert a fundamental right or differential treatment based on his protected class.  *See Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 694 (10th Cir. 1996) ("A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent") (citations omitted);  *Villanueva v. Carere*, 85 F.3d, 481, 485 (10th Cir.

1996) (Although "[t]he discriminatory purpose need not be the only purpose, . . . it must be a motivating factor in the decision"). *See also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.") (citations omitted).

Nor does Mr. Owen adequately allege that Defendants treated him differently than others who were similarly situated and that the treatment was not reasonably related to some legitimate penological purpose.  Mr. Owen alleges that

> [t]here were thirty four inmates that worked in the garment factory that were asked to volunteer for the incentive unit, twenty eight of us refused.  There were many inmates asked to volunteer for the incentive unit that refused.  There were many inmates that signed up to volunteer for the incentive unit, that refused, when it was their time to move into the incentive unit.  They were not fired from their job assignment or moved for choosing not to volunteer for the incentive unit.

(*See* Doc. # 28-1 at 7 of 13).  Because inmate classification is discretionary it is not plausible that inmates are similar in every relevant respect for the purpose of equal protection claims. *See Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (noting that a prisoner's "claim that there are no relevant differences between him and other inmates that reasonably might account for their different treatment is not plausible or arguable") (internal quotation marks and citation omitted).  Mr. Owen fails to allege facts that would establish he was similarly situated in all material respects to the inmates to whom he compares himself.  Mr. Owen does not identify any specific inmates or their or housing assignments.  Mr. Owen's conclusory allegations that he was treated differently from similarly situated inmates without additional information is insufficient to state an equal protection claim.  *Thomas v. N.M. Corr. Dep't*, 272 F. App'x 727, 729 (10th Cir. 2008) (citation omitted).  Even at this more generous motion-to-dismiss stage, Mr. Owen's allegations are merely conclusory and lacking in factual

basis.  Without sufficient factual allegations that he was treated differently than other similarly situated persons or that Defendants acted with a discriminatory motive, Mr. Owen fails to state an equal protection claim.  *See Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) ("Absent a threshold showing that [Mr. Owen] is similarly situated to those who allegedly receive favorable treatment, [he] does not have a viable equal protection claim."); *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1988) ("In order to assert a viable equal protection claim, [Mr. Owen] must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him].").

>            d.      Failure to State a Claim against Defendants Medina and Falk

Mr. Owen sues Defendants Medina and Falk in their individual capacities as the Warden and Associate Warden, respectively, of LCF.  Defendants Medina and Falk argue that Mr. Owen fails to plead sufficient facts to support an inference that they had any personal participation in or any supervisory liability for the alleged violations of his constitutional rights.

The Tenth Circuit Court of Appeals has summarized the parameters of supervisory liability under § 1983.

>    Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. There is no concept of strict supervisor liability under § 1983. This does not mean that a supervisor may not be liable for the injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part.
>    Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights. In short, the supervisor must be personally involved in the constitutional violation, and a sufficient causal connection must exist between the supervisor and the constitutional violation.
>    In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an affirmative link between the supervisor and the violation, namely the active

> participation or acquiescence of the supervisor in the constitutional violation by
> the subordinates. . . .

*Serna v. Colorado Dep't. of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (internal quotation marks and citations omitted).  Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted);  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted);  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.");  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Mr. Owen fails to allege what role, if any, these two Defendants had in terminating him from his prison employment or in changing his housing assignment.   Mr. Owen alleges merely that Defendant Falk responded to his Step 2 grievance on an unspecified date and "conspired with the other Defendants to violate my constitutional rights." (*See* Doc. # 28-1 at 6, 9 of 13).  He alleges only that Defendant Medina "conspired" and "after being informed of the violation through a report or appeal, failed to remedy the wrong." (*See id.*).  The court concludes, *infra.*, that Mr. Owen has not stated a claim for conspiracy.  Mr. Owen does not plead that these two Defendants had any specific knowledge of Mr. Owen's circumstances, any direct contact with him, engaged in any specific conduct that gave rise to a constitutional violation, or in any way caused or participated in the alleged constitutional violations.  Without an allegation or evidence of direct responsibility for the alleged violations, Defendants cannot be held liable for an alleged constitutional violation on the basis that they were aware of or

denied grievances.  The Tenth Circuit has repeatedly held "that the denial of . . . grievances alone is insufficient to establish personal participation in the alleged constitutional violations." *Arocho v. Nafziger*, 367 F. App'x 942, 955 (10th Cir. 2010) (internal quotation marks and citations omitted).  *Accord, George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").  Mr. Owen fails to allege that Defendant Falk or Medina personally participated in, exercised control, directed, or tacitly authorized any unconstitutional actions.  As Mr. Owen's failure to allege the requisite personal participation leaves no basis for holding Defendants Falk or Medina individually liable under § 1983, the claims alleged against these Defendants are properly dismissed.

       e.      Conspiracy Claim

      The court has concluded, *supra.*, that none of Mr. Owen's claims for relief states an actionable claim for violation of his federally protected rights.  Absent an underlying claim for violation of his federally protected rights, Mr. Owen cannot state a claim for conspiracy to violate those rights.  *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995) ("In order to succeed on [a § 1983 conspiracy] claim," the plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right.  We have already determined, however, that [the plaintiff] has failed to establish the existence of any constitutional violations.  Since an essential element of the conspiracy claim is absent, the allegation fails.") (citation omitted).  *See also Jones v. Clinton*, 990 F. Supp. 657, 676 (E.D. Ark. 1998) ("absent an underlying violation of federal law, there can be no actionable claim alleging a [§ 1985] conspiracy to achieve that end").

      Even if there were a valid underlying claim, Mr. Owen's allegations that Defendants "conspired' to violate his First Amendment rights are insufficient to state a claim.  *See, e.g.,*

*Crabtree By and Through Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)

("[T]he rule is clear that allegations of conspiracy must provide some factual basis to support

the existence of the elements of a conspiracy: agreement and concerted action.").  *See also*

*Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir.1990) ("The participants in the conspiracy must

share the general conspiratorial objective . . . [t]o demonstrate the existence of a

conspiratorial agreement it simply must be shown that there was a single plan, the essential

nature and general scope of which [was] know[n] to each person who is to be held

responsible for its consequences.") (internal quotation marks and citation omitted).  Mr. Owen

alleges that Defendants "conspired . . . by stating that the placement in the incentive unit was

not a voluntary requirement, that it was policy."  (*See* Doc. # 28-1 at 6 of 13).  Mr. Owen fails

to allege facts sufficient to suggest the existence of any of the elements of a conspiracy.  Mr.

Owen does not allege any specific communication, agreement, cooperation, or concerted

action from which a conspiracy between the Defendants could be inferred.  *See Durre v.*

*Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Because plaintiff failed to allege specific facts

showing agreement and concerted action among defendants, the district court properly

dismissed the conspiracy claim with prejudice.").  Mr. Owen's conclusory allegation of

conspiracy is not sufficient to state a claim.

     f.    Compensatory Damages

     Defendants move to dismiss Mr. Owen's request for compensatory damages on the

basis that it fails to comply with the PLRA, 42 U.S.C. § 1997e(e), which bars a prisoner from

bringing a civil action "for mental or emotional injury suffered while in custody without a prior

showing of physical injury."  *See Turner v. Schultz*, 130 F. Supp. 2d 1216, 1222-23 (D. Colo.

2001) ("[A]lthough claims for mental and emotional distress can be brought pursuant to §

1983, . . . § 1997e(e) provides that 'such a suit cannot stand unless the plaintiff has suffered

a physical injury in addition to mental or emotional harms.' ") (quoting *Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 807 (10th Cir. 1999)).  As Mr. Owen's allegations do not suggest any physical harm caused to him by the alleged constitutional violations, his claim for compensatory damages is properly dismissed.

g.    Punitive Damages

Defendants also move to dismiss Mr. Owen's claim for punitive damages.  To claim punitive damages, Mr. Owen must claim that Defendants acted with an evil intent or with reckless indifference.  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Mr. Owen does not allege that Defendants maliciously intended to harm him or were recklessly indifferent to potential harm to him.  "Simple ignorance of the applicable legal rules, even arrogant ignorance, does not by itself indicate" the level of intent required to successfully plead a claim for punitive damages. *See Lavicky v. Burnett*, 758 F.2d 468, 477 (10th Cir. 1985) (denying punitive damages where "there was no evidence of malice, wantonness, or oppressiveness").  Further, "a claim for punitive damages most certainly depends upon the merits of the claimant's substantive assertions and is subject to the physical injury requirement of 42 U.S.C. § 1997e(e)." *Milledge v. McCall*, 43 F. App'x 196, 199 (10th Cir. 2002) (citation omitted).  The court has found, *supra.*, that Mr. Owen fails to state a claim for a constitutional violation or any physical injury.  For this reason also, his claim for punitive damages is properly dismissed.

h.    Qualified Immunity

Defendants in their individual capacities raise the defense of qualified immunity. Whether a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

Resolution of a dispositive motion based on qualified immunity involves a

> two-pronged inquiry. First, a court must decide whether the facts that a plaintiff
> has alleged or shown make out a violation of a constitutional right. Second, . . .
> the court must decide whether the right at issue was clearly established at the
> time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation

marks and citations omitted).  "A reviewing court may exercise [its] sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be addressed first

in light of the circumstances in the particular case at hand."  *Id.* "Qualified immunity is

applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*

Once a defendant asserts the defense of qualified immunity, the burden shifts to the

plaintiff to show that (1) the defendant violated a constitutional or statutory right and (2) the

constitutional or statutory right was clearly established when the alleged violation occurred.

*Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003).  As the court concludes that Mr.

Owen fails to state a claim to which relief can be granted as to any alleged constitutional

violation, Defendants in their individual capacities are entitled to qualified immunity.  The

court need not reach the "clearly established" prong of qualified immunity to conclude that Mr.

Owen's claims fail.  *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter

judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry

his burden to show violation of a constitutional right).

Accordingly, IT IS ORDERED that Mr. Owen's "Motion for Leave to File an Amended

Complaint" (Doc. # 28), filed on November 14, 2012, is GRANTED.  The tendered Amended

Complaint (Doc. # 28-1) is accepted for filing and shall be docketed as the Amended

Complaint as of the date of this Order and Recommendation.

Further, IT IS RECOMMENDED that Defendants' Motion to Dismiss (Doc. # 15) (filed

on June 22, 2012) be GRANTED.  Mr. Owen's claims against Defendants in their official

capacities for money damages are properly dismissed without prejudice as barred by the

Eleventh Amendment.  Mr. Owen's claims against Defendants in their official capacities for

injunctive relief and in their individual capacities are properly dismissed for failure to state a

claim to which relief can be granted.  No claims remaining, the Amended Complaint is

properly dismissed in its entirety.


**Advisement to the Parties**

Within **fourteen days** after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of

Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th

Cir. 1995).  A general objection that does not put the District Court on notice of the basis for

the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the

magistrate judge's report and recommendation must be both timely and specific to preserve

an issue for de novo review by the district court or for appellate review."  *United States v. One*

*Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057,

1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the

District Judge of the Magistrate Judge's proposed findings and recommendations and will

result in a waiver of the right to appeal from a judgment of the district court based on the

proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195

F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's

recommendation *de novo* despite the lack of an objection does not preclude application of the

"firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining*

*Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the

Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 18th day of December, 2012.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge